.[Sac. No. 827.   Department Two. — October 11, 1901.]

CRANES GULCH MINING COMPANY, Respondent, v. JOSEPH SCHERRER et al., Appellants.

MINERAL LANDS — PLACER CLAIM — CERTIFICATE OF PURCHASE — UNAUTHORIZED RESERVATION IN PATENT — KNOWN LODES. — A certificate of purchase of a placer-mining claim, issued under the Placer Act of July 9, 1870, prior to the passage of the General Mining Act of May 10, 1872, conferred upon the purchaser an equitable title, and vested right to a patent, which was not subject to section 11 of the latter act; and a reservation, made in a patent for such claim, issued after May 10, 1872, of all known lodes within the limits of the placer claim, was unauthorized and void.

ID. — TITLE TO MINERALS — SUBSEQUENT LOCATION OF LODE CLAIM. — In the absence of a prior location of a known lode within the limits of the placer claim, and a contest thereupon in the land-office, the patent granted under the certificate of purchase issued prior to the act of 1872 conferred upon the purchaser the title to all minerals within such limits; and a subsequent location, made by another person, of a lode previously known to exist therein, is invalid and void.

APPEAL from a judgment of the Superior Court of El Dorado County.   N. P. Bennett, Judge.

The facts are stated in the opinion of the court.

Tabor & Tabor, and John M. Fulweiler, for Appellants.

There was a known vein or lode within the limits of the placer claim, within the meaning of the act of Congress, which was reserved from the operation of the patent.   (*Iron Silver M. Co.* v. *Cheesman*, 116 U. S. 529; *Reynolds* v. *Iron Silver M. Co.*, 116 U. S. 787; *Stevens* v. *Williams*, 1 McCrary, 480; *Foote* v. *National Mining Co.*, 2 Mont. 402; *Hyman* v. *Wheeler*, 29 Fed. Rep. 353; *Phillpots* v. *Blasdel*, 8 Nev. 62; *Iron Silver M. Co.* v. *Mike and Starr G. & M. Co.*, 143 U. S. 394.)

Lindley & Eickhoff, and Williams & Witmer, for Respondent.

The land department, prior to the act of 1872, adjudicated the character of the land as placer-ground, under the act of 1870, and the court cannot review its adjudication.   (*Barden* v. *Northern Pac. R. R. Co.*, 154 U. S. 288, 331; *United States* v.

*Budd,* 144 U. S. 154, 167; *Shaw* v. *Kellogg,* 170 U. S. 312; *Cowell* v. *Lammers,* 10 Saw. 246, 255; *Gale* v. *Best,* 78 Cal. 235, 237;[1] *Klauber* v. *Higgins,* 117 Cal. 451, 458.) The certificate of purchase, prior to May 10, 1872, conferred a vested right to a patent. (*Benson Mining etc. Co.* v. *Alta M. etc. Co.,* 145 U. S. 428, 430–432; *Con. Wyoming G. M. Co.* v. *Champion M. Co.,* 63 Fed. Rep. 540, 541; *Walrath* v. *Champion M. Co.,* 63 Fed. Rep. 552, 553.) The land department are the agents of the government, and cannot insert reservations or recitals not warranted by law. (*Cowell* v. *Lammers,* 10 Saw. 246, 248; *Davis* v. *Weibbold,* 139 U. S. 507, 527; *Iron Silver M. Co.* v. *Reynolds,* 124 U. S. 374, 382; *United States* v. *Iron Silver M. Co.,* 128 U. S. 673, 682.) There was no known vein or lode, within the meaning of the statute. (*Iron Silver M. Co.* v. *Mike and Starr G. & M. Co.,* 143 U. S. 394, 404.)

TEMPLE, J.—Action to quiet title to mining-ground. Plaintiff claims under a patent for a placer mine, dated July 1, 1872. The defendants claim under a lode location made in 1897. Plaintiff's patent was based upon proceedings instituted May 9, 1871, and upon final entry and payment made February 14, 1872.

The rights of plaintiff had their inception under what is usually called the "Placer Act," dated July 9, 1870. This act, though not repealed, was amended by adding a reservation of known lodes, and in some other respects, by the act of May 10, 1872, sometimes called the "General Mining Act." In section 10 it was enacted that the Placer Act should continue in force, except as to the proceedings to obtain a patent, which, it was provided, "shall be similar to the proceedings prescribed by sections 6 and 7 of this act for obtaining patents to vein or lode claims." It was further enacted in the same section, that all placer claims thereafter located should conform to legal subdivisions of public-land surveys, "provided, that proceedings now pending may be prosecuted to their final determination under existing laws; but the provisions of this act, when not in conflict with existing laws, shall apply to such cases."

Defendants claimed under a location made of a lode some twenty-six years after the issuance of the patent. It is contended that the lode was a known lode when the application

---

[1] 12 Am. St. Rep. 44.

for the patent was made in 1871. The patent contained the usual reservation found in all patents issued under the act of 1872, of veins or lodes known to exist at its date, within the described premises. Defendants had no claim to the premises at the date of the passage of the act of 1872, or prior to 1897. It does not appear that there was any adverse claim to the placer location prior to that time.

Sections 6 and 7 contain rather elaborate provisions in regard to the application for a patent and for a contest. Section 11 provides for the case where a placer claim contains a lode within its boundaries. The placer claimant may purchase the lode if he chooses, but if a lode is known to exist within the placer, "an application for a patent for such placer claim, which does not include an application for the vein or lode claim, shall be construed as a conclusive declaration that the claimant of the placer claim has no right to the vein or lode claim, but when the existence of a vein or a lode in a placer claim is not known, a patent for the placer claim shall convey all valuable mineral and other deposits within the boundaries thereof."

The first question of interest here is, Does section 11 apply to plaintiff's location? and does it authorize the reservation contained in the patent? It may be conceded that where no application for a patent had been made by a placer claimant, whose location and occupation were such that he could have inaugurated proceedings for a patent before the act of 1872 was passed, he would be compelled to proceed under section 11, and that the act made his patent subject to the conditions there expressed. Possibly, this would be true as to applications pending when the last act was passed, provided payment had not been made and a certificate issued, but to make it apply to a claim, when a certificate of purchase has been issued before the act of 1872 was passed, so as to include these reservations, would violate the provisions in section 16 of the act, "that nothing contained in this act shall be construed to impair, in any way, rights or interests in mining property acquired under existing laws."

Upon payment of the price, and its acceptance, the applicant becomes vested with a complete equitable title, and to a patent which will convey to him the legal title. He is the real owner of the mine. His right is complete; only the evidence of his right is withheld. It has been held, "When the

price is paid, the right to a patent immediately arises.  If not issued at once, it is because the magnitude of the business in the office causes delay.  But such delay in the mere administration of affairs does not diminish the rights flowing from the purchase, or cast additional burdens upon the purchaser, or expose him to the assaults of third parties."  (*Benson Mining etc. Co.* v. *Alta Mining etc. Co.*, 145 U. S. 431.  See also *Stark* v. *Starrs*, 6 Wall. 402, and *People* v. *Shearer*, 30 Cal. 645.)

One of the contentions of appellants upon this point, if I rightly grasp it, is, that lodes did not pass by a patent issued for a placer claim under the act of 1870.  This is based largely upon the language of section 12, as numbered in the amendatory act: "Claims usually called 'placers,' including all forms of deposits, *excepting veins* of quartz and other rock in place, shall be subject to patent and entry under this act," etc.; and it is contended that it is to be construed as other sections of the act of which it is made a part had been construed.  The act, it is contended, authorizes the sale to a lode claimant of one lode only.  He gets no land, save such as is required for the convenient working of his lode.  If another lode or a placer were found within land taken by a lode claimant under the act of 1866, of which the act of 1870 was amendatory, the lode claimant would have no right to the other lode, or to the placer.  So here, it is said, the act of 1870 only authorized the sale of a placer *claim*.  Without entering the land or getting a patent, the claimant could hold and work out his mine, but to hold it he was required to comply with certain burdensome conditions.  The patent, it is argued, merely gave him title to his claim, and relieved him from the burdensome conditions.  He then owned his claim, freed from the conditions and the liability to lose it by abandonment.  But what he *claimed* was the right to mine that placer, and, in terms, the statute confines his patent to that.  And this position is much strengthened by the rule of construction which requires all grants from the government to be construed favorably to the government and against the grantee.

Furthermore, it is said the same act provides for the purchase of a lode claim, and land necessary for its working, at the price of five dollars per acre, and it is provided that "no patent issue for more than one vein or lode, which shall be expressed in the patent issued."  It is strongly urged that Congress

could not have intended, while so carefully providing that no one person should be permitted to purchase more than one lode, to permit, in another section of the same statute, any one to purchase a tract of land, which may include many lodes, at one half the price per acre charged for lode claims.

All this is very plausible and persuasive, but the statute clearly authorizes the sale of placer-lands in tracts not to exceed 160 acres, and that such tract shall conform to the system of public surveys. No provision is made for any reserved right in the government, or for the disposition of the land subject to the rights of the placer claimant. The lode claimant gets a complete title to the lands within his patent, subject only to the express reservation, which the law directs should be contained in the patent. No reason appears why a placer patent shall not be construed in the same way, and the law has not expressed any limitation upon the estate, or authorized the officers of the land department to express in the patent any reservation. In the absence of a located lode within the limits of the placer claim, and of a contest, it would seem that the officers of the land department need only ascertain that there is a placer which may be entered as such.

The law of 1872 supplied an apparent defect in the law of 1866, as amended in 1870, by providing for a reservation of known lodes. This is calculated to protect the government, and to prevent the entry of lodes as placer, and thereby get lode claims for $2.50 per acre.

The argument merely tends to show that the rights of the government were not sufficiently protected by the law of 1870, and the further provision made in 1872, in that matter, seems to show that, in the opinion of Congress, without the express reservation full title to the land would pass under the patent.

The judgment is affirmed.

McFarland, J., and Henshaw, J., concurred.

Hearing in Bank denied.